**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 12-140-DLB**

**DARCY TALBERT**                                                                                       **PLAINTIFF**


vs.                                    **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                                **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and for the reasons set forth herein, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Darcy Talbert filed an application for disability insurance benefits (DIB) on August 3, 2007 (Tr. 104-08), but her application was denied.  At Plaintiff's request, an administrative hearing was conducted on April 29, 2008, by Administrative Law Judge (ALJ) Don Paris.  (Tr. 31-58).  On July 17, 2008, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB.  (Tr. 7-18, 19-62).  This decision became the final decision of the Commissioner when the Appeals Council denied review on August 29, 2008 (Tr. 1-4).  Plaintiff appealed to this Court on September 25, 2008, and this Court reversed the ALJ's decision and remanded to the Social Security Administration on July 23, 2009.  (Tr. 579-

1

95). The Appeals Council remanded the case to the ALJ, who then held a new hearing on April 27, 2010, and issued a new decision on July 9, 2010, again finding that claimant is not disabled (Tr. 521-35, 540-70, 596-98). Plaintiff then exhausted her administrative remedies. (Tr. 511-13).

On May 3, 2012, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 15 & 16).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B. The ALJ's Determination**

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since February 16, 2007, the alleged onset of her disability. (Tr. 527). At Step 2, the ALJ found Plaintiff's obesity, myofascial pain/fibromyalgia, bilateral carpal tunnel syndrome, sarcoidosis,[1] and affective disorder to be severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 529). First, the ALJ found that Plaintiff's fibromyalgia, bilateral carpal tunnel syndrome, and sarcoidosis were not severe enough to meet Listings 1.00,

---

[1] As the Commissioner notes, "[s]arcoidosis is a disease in which inflammation occurs in the lymph nodes, lungs, liver, eyes, skin or other tissues. The disease most often affects the lungs." (Doc. # 16, at 2 n. 1) (citing A.D.A.M. Medical Encyclopedia, Sarcoidosis, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001140/ (last visited Aug. 16, 2013)).

3.00, 11.00 or 14.00. (*Id.*). Second, the ALJ concluded that Plaintiff's obesity did not meet or equal the criteria of listing 12.04.

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work with the following restrictions: stand, walk or sit for six hours in an eight-hour day, no more than frequently push or pull with both upper and lower extremities; never climb ladders or ropes, or crawl; occasionally stoop, kneel, crouch, or climb ramps or stairs; no more than frequent handling, such as seizing or grasping; avoid concentrated exposure to full body vibration, concentrated exposure to fumes, odors, dust or gases, extreme heat or humidity, and hazards such as unprotected heights and dangerous machinery. (Tr. 531). The ALJ also found that Plaintiff had the following mental restrictions: she could understand, remember, and carry out simple and detailed work instructions, sustain attention and concentration for extended periods of two-hour segments in an eight-hour day, adequately relate to coworkers and supervisors in an object-focused work environment, and adapt to routine changes in a work environment that is not highly pressured. (*Id.*). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was able to perform past relevant work as a court fine clerk. (Tr. 533).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 533-34). He thus concluded that Plaintiff was not disabled. (Tr. 535).

    **C.**    **Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Jennifer Beck.

Second, Plaintiff argues that the ALJ failed to pose an adequate hypothetical to the vocational expert. Each of these arguments will be addressed in turn.

### 1. The ALJ appropriately weighed the opinion of treating physician Dr. Jennifer Beck.

Plaintiff argues that the ALJ failed to accord appropriate weight to the opinion of her treating physician, Dr. Jennifer Beck. As a general matter, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.1988) (citations omitted). However, the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, *Houston v. Secretary*, 736 F.2d 365, 367 (6th Cir.1984), and is not contradicted by substantial evidence to the contrary. *Loy v. Secretary*, 901 F.2d 1306, 1308-09 (6th Cir. 1990). Thus, the Commissioner is not bound by the opinion of a treating physician when the opinion is contradicted by objective medical evidence. *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir.1992). Moreover, the ALJ is permitted to disregard the treating doctor's opinion regarding a diagnosis where such diagnosis is unsupported by any clinical findings or medical evidence. *Cutlip*, 25 F.3d at 286. If an ALJ elects not to give controlling weight to a treating physician's opinion, the regulations also require him to provide "good reasons" for his decision. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also, Hall*, 837 F.2d at 276; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir.1986).

Dr. Beck completed a functional capacity assessment in 2007 limiting Plaintiff to lifting 10 pounds occasionally and frequently, standing and/or walking less than two hours in an eight-hour work day, and sitting about six hours. (Tr. 438-41). She indicated that

Plaintiff would have a limited ability to push and pull in both the upper and lower extremities, and that Plaintiff could never climb, balance, kneel, or crawl, and could only occasionally crouch or stoop with a limited ability to reach overhead. (*Id.*). She also authored a letter in April 2008 noting that a MRI performed on Plaintiff revealed a herniated disc and multiple disc bulges. (Tr. 510). She opined that until these back issues were addressed, work would be "very difficult if not impossible" for Plaintiff. (*Id.*). Her opinion essentially recommended that Plaintiff be restricted to sedentary work. (Doc. # 15-1, at 8; Tr. 533).

In its remand order, this Court found that the ALJ failed to consider Dr. Beck's April 2008 letter in his July 2008 ruling finding that Plaintiff was not disabled. The ALJ has now considered Dr. Beck's letter (Tr. 527), but concludes her opinion is still controverted by the record medical evidence, Plaintiff's activities of daily living, the opinions of the state agency medical and/or psychological consultants, and Plaintiff's own lack of credibility. (Tr. 533).

Plaintiff now contends that the ALJ failed to give "good reasons" for failing to accord controlling weight to Dr. Beck's opinion, and she offers three points to support this contention. First, Plaintiff argues that the ALJ "summarily dismissed Dr. Beck's opinion without pointing to any objective medical evidence to show the Plaintiff was capable of more than the sedentary work ability Dr. Beck assigned." (Doc. # 15-1, at 9). In fact, however, the ALJ pointed to several pieces of objective medical evidence specifically undercutting Dr. Beck's opinion.

For instance, Dr. Beck opined that Plaintiff should be limited to walking or standing two hours a day because her sarcoidosis caused her shortness of breath, and not because of her alleged pain or her fibromyalgia. (Tr. 439). The ALJ, however, noted that Plaintiff's

6

sarcoidosis was stable in June 2006. (Tr. 528, 209-10, 216-18, 297-98, 300-01, 453-60). He also noted that recent chest x-rays and pulmonary function were normal (Tr. 528, 453-60). Furthermore, the record reflects that at least one physician who examined Plaintiff in April 2008 recommended low impact aerobic activities (Tr. 422, 456). In addition, a January 2008 spirometry demonstrated that Plaintiff had normal lung volume and normal diffusion; that her lungs were clear with no wheezing; and that her sarcoidosis had not progressed. (Tr. 528, 444-46). These facts undermine Dr. Beck's primary rationale for restricting Plaintiff to sedentary work.

The ALJ also pointed to objective medical evidence undermining Dr. Beck's opinion that Plaintiff could not lift more than ten pounds. He noted that despite the herniated disc and disc bulging in her back, Plaintiff's physicians did not recommend aggressive treatment such as back surgery; that she has negative Tinel's and Phalgen's signs[2] bilaterally; that she has only mildly decreased range of motion of the wrist; and that she has normal gait and station. (Tr. 532). Neither Dr. Beck's treatment notes, nor those of the Fayette County Health Department (where Plaintiff sought treatment) include any limitations on Plaintiff's lifting capabilities. (Tr. 13, 710, 712, 714, 716, 726). And as noted above, Plaintiff was advised that she should participate in low impact aerobic exercise, notwithstanding her pain and fibromyalgia issues. (Tr. 456). These facts contradict Dr. Beck's opinion regarding

---

[2] As the Commissioner explains, "Phalen's sign is a test for to find entrapment neuropathy where there is maximum passive flexion of the wrist for one minute . . . . Tinel's sign is a sensation of tingling felt in the distal extremity of a limb when percussion is made over the site of an injured nerve, indicating a partial lesion or early regeneration in the nerve." (Doc. # 16, at 6 n. 4) (citing McGraw-Hill Concise Dictionary of Modern Medicine, Phalen sign (2002), available at http://medical-dictionary.thefreedictionary.com/Phalen+sign (last visited Aug. 16, 2013), and The Am. Heritage Medical Dictionary, Tinel's Sign (2007), available at http://medical-dictionary.thefreedictionary.com/Tinel's+sign (last visited Aug. 16, 2013)).

Plaintiff's ten pound lifting restriction. It was thus reasonable for the ALJ to conclude that he record evidence "simply fails to establish the presence of musculoskeletal, neurological impairment that could reasonably be expected to cause symptoms of the degree alleged." (Tr. 532).

In sum, then, Plaintiff's first point fails because the ALJ relied on objective medical evidence contradicting Dr. Beck's opinion.[3]

Plaintiff's second point concerns her fibromyalgia. Although her argument is unclear, she seems to suggest that the ALJ improperly weighed or failed to adequately account for Dr. Beck's diagnosis of fibromyalgia when he found that she is capable of light work. This argument lacks merit, however. As Defendant correctly points out, "the diagnosis of a condition . . . says nothing regarding the limiting effect of that condition. *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (noting that a diagnosable impairment is not necessarily disabling). The limiting effect of a diagnosis is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e); *accord Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The ALJ, not the physician, has the "ultimate responsibility of determining disability and residual functional capacity." *Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x. 595, 598 (6th Cir. 2009). Here, the fact that Plaintiff was diagnosed with fibromyalgia does not mean that the ALJ was legally required to restrict her to sedentary work. The ALJ was well within his authority when he determined that she was capable of light work notwithstanding her fibromyalgia.

---

[3] It is also worth noting that Dr. Beck's opinion that Plaintiff cannot climb stairs or ramps, balance or kneel is irrelevant to her past work as a file clerk because the position does not require such tasks. (*See* Doc. # 16, at 11).

8

Plaintiff's third point is that the ALJ improperly concluded that her activities of daily living are inconsistent with Dr. Beck's opinion restricting her to sedentary work.  This argument lacks merit as well.  It is within the province of the ALJ to weigh the credibility of the evidence.  *Martin County Coal/Pilgrim Min. Co. v. Muncie*, No. 2012–CA–002174–WC, 2013 WL 3968733, at *3 (Ky. Ct. App. Aug. 2, 2013) (citation omitted).  The fact that Plaintiff may disagree with his assessment is irrelevant.  Here, the ALJ found that Plaintiff's activities of daily living contradicted her claims of debilitating pain and other symptoms. (*Id.*).  He noted that Plaintiff is able to perform light household chores such as cooking, laundry, and vacuuming; that she goes grocery shopping and attends her son's parent-teacher conferences and football games; and that she watches television and reads during the day.  (Tr. 532-33).

After observing Plaintiff's demeanor and evaluating the medical evidence, he also concluded that Plaintiff lacked credibility regarding the limiting effect of her pain.  As he put it, "it appears that the claimant is trying to make her symptoms sound significantly more severe than they actually are."  (Tr. 532).  In particular, he observed that Plaintiff had failed to comply with treatment, including a rather basic recommendation to regularly participate in low impact aerobic activities and cognitive behavioral therapy for fibromyalgia.  (*Id.*).  He also observed that Plaintiff had a history of being dismissed as a patient by pain management doctors, and that she lied about this fact at the administrative hearing.  (Tr. 527, 716, 560).  Again, while Plaintiff may disagree with the ALJ's conclusion, the ALJ's findings regarding Plaintiff's credibility were a valid exercise of his authority, and the Court is not permitted to re-weigh the evidence.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (courts are to affirm the Commissioner's decision, provided it is

supported by substantial evidence, even if they might have decided the case differently).

For all of these reasons, the Court rejects Plaintiff's first argument that the ALJ failed to provide good reasons for declining to accord controlling weight to Dr. Beck's opinion.[4]

### 2. The ALJ posed an adequate hypothetical to the vocational expert

Plaintiff's second argument is that the ALJ failed to pose an accurate hypothetical question to the vocational expert. In posing such a question, an ALJ must accurately describe Plaintiff's functional limitations, *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779. (6th Cir. 1987), but need only incorporate those limitations he finds to be credible." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). In its remand order, this Court found that at the first hearing, the ALJ's hypothetical question was insufficient because it only incorporated the limitations found by the state agency reviewers and not the more severe limitations found by Dr. Beck and by rheumatologist and one-time examiner Dr. Haider Abbas. (Tr. 593). The Court made that finding because the ALJ had not given "good reasons" for failing to accord controlling weight to Dr. Beck's opinion, and it was therefore improper for him to omit Dr. Beck's limitations on Plaintiff's activity from the hypothetical.

Plaintiff now complains that at the second hearing, the ALJ posed a nearly identical hypothetical question, except he added that Plaintiff was obese. While it is true that the hypothetical was essentially the same, this does not mean that it was in error. In his most recent ruling, the ALJ has now given good reasons for failing to accord controlling weight to Dr. Beck's opinion. Having done so, he was not required to include Dr. Beck's proposed

---

[4] The Court notes that it has no obligation to address Plaintiff's citation to this Court's unpublished decision in *Henry v. Astrue*, No. 09-373-GWU (E.D. Ky. February 16, 2011).

limitations in his hypothetical because he had validly determined that they were not credible.  *Casey*, 987 F.2d at 1235.  His hypothetical was therefore proper, and the Court rejects Plaintiff's challenge to it.

### III.   CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence.  Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 15) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 16) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 16th day of August, 2013.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\12-140 MOO granting MSJ in SSA appeal.wpd